HOWARD C. MISKIN (HM7038)
GLORIA TSUI-YIP (GT9377)
WENDI OPPER UZAR (WO4547)
Attorneys for Plaintiff
Molino's Diamonds Inc.
Miskin & Tsui-Yip LLP
1350 Broadway, Suite 802
New York, New York 10018
(T)(212) 268-0900
(F) (212)268-0904
Email howard@mt-iplaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
MOLINO'S DIAMONDS INC. d/b/a            :
MOLINO JEWELERS,                        :
           Plaintiff,            :
                         : Civil Action No. 09-cv-5281 (GEL)(hp)
                         :            ECF Case
      - against -                  :
                         :
VALUEVISION MEDIA, INC. d/b/a SHOPNBC,  :
NBC UNIVERSAL, INC., EFFY JEWELERS,     :
CORP., FATOLLAH HEMATIAN and            :
JOHN DOE                                :
              Defendants.          :
-------------------------------------------------------------X

<div align="center">

**COMPLAINT**

</div>

Plaintiff, Molino's Diamonds Inc. d/b/a Molino Jewelers (hereinafter "Molino" or

"Plaintiff"), complains of ValueVision Media, Inc. d/b/a ShopNBC (hereinafter "ValueVision"),

NBC Universal, Inc. (hereinafter "NBC"), Effy Jewelers, Corp. (hereinafter "Effy Jewelers"),

Fatollah Hematian (hereinafter "Hematian") (Hematian and Effy Jewelers hereinafter

collectively "Effy") and John Doe (hereinafter "DOE") (hereinafter collectively "Defendants"),

as follows:

      1.      This action arises under the patent laws of the United States, 35 U.S.C. Section

101 et seq.

<u>Jurisdiction and Venue</u>

2.      This Court has original subject matter jurisdiction over this action under Title 28, United States Code, Sections 1338(a) and (b).

3.      Upon information and belief, Defendant ValueVision, through its officers, agents and/or employees, transacts or is doing business in this District, including soliciting business in, shipping goods into this district, sales and derives substantial revenue from intrastate and interstate commerce, which has an effect in this district.  Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(c) and 1400(b).

4.      Upon information and belief, Defendant NBC, through its officers, agents and/or employees, transacts or is doing business in this District, including soliciting business in, shipping goods into this district, sales and derives substantial revenue from intrastate and interstate commerce, which has an effect in this district.  Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(c) and 1400(b).

5.      Upon information and belief, Defendant Hematian, through his agents and/or employees, transacts or is doing business in this District, including soliciting business in, shipping goods into this district, sales and derives substantial revenue from intrastate and interstate commerce, which has an effect in this district.  Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(c) and 1400(b).

6.      Upon information and belief, Defendant Effy Jewelers, through his agents and/or employees, transacts or is doing business in this District, including soliciting business in, shipping goods into this district, sales and derives substantial revenue from intrastate and interstate commerce, which has an effect in this district.  Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(c) and 1400(b).

7.      Upon information and belief, Defendant DOE, through its officers, agents and/or employees, transacts or is doing business in this District, including soliciting business in, shipping goods into this district, sales and derives substantial revenue from intrastate and interstate commerce, which has an effect in this district.  Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(c) and 1400(b).

<u>The Parties</u>

8.      Plaintiff is a New York corporation having a principal place of business at 324 Route 202, Pomona, New York 10970.

9.      Upon information and belief, ValueVision is a Minnesota corporation having a principal place of business at 6740 Shady Oak Road, Eden Prairie, MN 55244.

10.      Upon information and belief, NBC is a Delaware corporation having a principal place of business at 30 Rockefeller Plaza, New York, New York 10112.

11.      Upon information and belief, Hematian is an individual, having a place of business at 15 West 46th Street, New York, New York 10017.

12.      Upon information and belief, Effy Jewelers is a New York corporation having a principal place of business at 7 West 45th Street, 11th Floor, New York, New York 10036.

13.      Upon information and belief, DOE is a corporation, entity or individual.

<u>Facts</u>

14.      Plaintiff is the owner of all right, title and interest in and to the valid and subsisting U.S. Patent No. 6,789,395 for "Convertible Pendant Jewelry," issued to William Molino, Igor Dranovsky and Mikhail Buryakov on September 14, 2004 (hereinafter "the '395 patent" or "the patent in suit"), a copy of which is attached hereto as Exhibit A.

15.    Upon information and belief, ValueVision has infringed the patent in suit, in this district and elsewhere by making, using and selling and inducing others to use and sell the following products: "The Convertible Diamond Heart Necklace", Item No. J182149, ("Defendant's Product A"), "Convertible Cross Necklace", Item No. J194685, ("Defendant's Product B"), and "Diamond Convertible Necklace", Item No. J128035, ("Defendant's Product C") (collectively hereinafter "Defendants' Products").   A copy from NBC's website, www.shopnbc.com, displaying Defendant's Product A is attached hereto as Exhibit B.  A copy from NBC's website, www.shopnbc.com, displaying Defendant's Product B is attached hereto as Exhibit C.  A copy from NBC's website, www.shopnbc.com, displaying Defendant's Product C is attached hereto as Exhibit D.

16.    Upon information and belief, NBC has infringed the patent in suit, in this district and elsewhere by making, using and selling and inducing others to use and sell Defendants' Products.   A copy from NBC's website, www.shopnbc.com, displaying Defendant's Product A is attached hereto as Exhibit B.  A copy from NBC's website, www.shopnbc.com, displaying Defendant's Product B is attached hereto as Exhibit C.  A copy from NBC's website, www.shopnbc.com, displaying Defendant's Product C is attached hereto as Exhibit D.

17.    Upon information and belief, Effy has infringed the patent in suit, in this district and elsewhere by making, using and selling and inducing others to use and sell the "Diversa Collection" convertible necklace ("Defendant's Product D").   A copy from Effy Jewelers' website, www.effycollection.com and www.effyjewelers.com, displaying Defendant's Product D is attached hereto as Exhibit E.

18.    Upon information and belief, Effy has infringed the patent in suit, in this district and elsewhere by making, using and selling and inducing others to use and sell Defendant's

Product A.   A copy from NBC's website, www.shopnbc.com, displaying Defendant's Product A is attached hereto as Exhibit B.

19.    Upon information and belief, Effy sold Defendant's Product A to NBC and ValueVision under the Effy Collection.

20.    Upon information and belief, DOE has infringed the patent in suit, in this district and elsewhere by making, using and selling and inducing others to use and sell Defendants' Products and/or Defendant's Product D.

21.    Upon information and belief, DOE has offered for sale and sold Defendants' Products to NBC and ValueVision.

22.    On or about April 12, 2005, a cease and desist letter was sent to ValueVision giving ValueVision notice of the patent in suit and requesting that ValueVision discontinue all sales of Defendant's Product B and account to Molino for past infringement.

23.    Upon information and belief, on or about November 30, 2005, ValueVision represented that it had ceased sales of Defendant's Product B and any other infringing pieces.

24.    Upon information and belief, on or about March 22, 2007, ValueVision began selling Defendant's Product C.

25.    On or about March 22, 2007, a second cease and desist letter was sent to ValueVision, again giving ValueVision notice of the patent in suit and  requesting that ValueVision discontinue all sales of Defendant's Product C and account to Molino for past infringement.

26.    On information and belief, subsequent to August 27, 2008, ValueVision and NBC sold and offered to sell Defendant's Product A.

27.     On information and belief, Defendant's Product A is being offered for sale on NBC's website, www.shopnbc.com.

28.     On information and belief, Defendant's Product D is being offered for sale on Effy Jewelers' websites, www.effycolleciton.com and www.effyjewelers.com.

<u>Patent Infringement of U.S. Patent No. 6,789,395</u>

29.     Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 28 as if fully set forth herein.

30.     This is a claim for patent infringement, arising under the patent law of the United States, Title 35, United States Code, Sections 101 <u>et seq.</u>

31.     Upon information and belief, ValueVision and NBC have infringed one or more claims of the '395 patent, in this district and elsewhere, by making, using and selling and inducing others to use and sell Defendants' Products embodying the '395 patent.

32.     On information and belief, ValueVision's and NBC's infringement has been with notice and knowledge of the '395 patent and are deliberate, willful and wanton.

33.     Upon information and belief, Hematian has infringed one or more claims of the '395 patent, in this district and elsewhere, by making, using and selling and inducing others to use and sell Defendant's Product A and Defendant's Product D embodying the '395 patent.

34.     Upon information and belief, Effy Jewelers has infringed one or more claims of the '395 patent, in this district and elsewhere, by making, using and selling and inducing others to use and sell Defendant's Product A and Defendant's Product D embodying the '395 patent.

35.     Upon information and belief, DOE has infringed one or more claims of the '395 patent, in this district and elsewhere, by making, using and selling and inducing others to use and sell Defendants' Products and Defendant's Product D embodying the '395 patent.

36.    By reason of the infringement by Defendants, Plaintiff has suffered damages in an amount to be ascertained upon an accounting.

37.    By reason of the infringement by Defendants, Plaintiff has suffered irreparable harm for which there is no adequate remedy at law and will continue to suffer additional irreparable harm unless Defendants are permanently and perpetually enjoined from continuing their infringement.

WHEREFORE, Plaintiff prays for judgment:

A.    Finding the patent in suit valid and infringed by Defendants;

B.    Preliminarily and permanently enjoining Defendants, their employees, officers, directors, agents, servants and all others in privity from infringing the claims of the patent in suit as provided for in 35 U.S.C. Section 283;

C.    Ordering an accounting to assess and award damages to Plaintiff for Defendants' infringement of the patent in suit, and increasing the damages awarded to Plaintiff to three times the amount found by reason of Defendants' willful continuing infringement as provided for in 35 U.S.C. Section 284;

D.    Awarding Plaintiff its costs and reasonable attorney's fees;

E.    Declaring this case exceptional by reason of Defendants' willful infringement and awarding Plaintiff its attorney's fees incurred in prosecuting this action as provided for in 35 U.S.C. Section 285; and

F.    Granting Plaintiff such other and further relief as this Court may deem just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Trial by jury is hereby demanded as to all issues in this action so triable.

Date:   June 3, 2009
        New York, New York

                                 _/s/ Gloria Tsui-Yip_____
                                  Howard C. Miskin (HM7038)
                                  Gloria Tsui-Yip (GT9377)
                                  Wendi Opper Uzar (WO4547)
                                  Attorneys for Plaintiff
                                  MISKIN & TSUI-YIP LLP
                                  1350 Broadway, Suite 802
                                  New York, New York 10018
                                  (t) (212) 268-0900
                                  (f) (212) 268-0904
                                  howard@mt-iplaw.com

**EXHIBIT A**



US006789395B2

(12) **United States Patent**         (10) **Patent No.:**     **US 6,789,395 B2**

Molino et al.                          (45) **Date of Patent:**        **Sep. 14, 2004**

(54) **CONVERTIBLE PENDANT JEWELRY**

(75) Inventors: **William Molino**, Valley Cottage, NY
                (US); **Igor Dranovsky**, New City, NY
                (US); **Mikhail Buryakov**, New City,
                NY (US)

(73) Assignee: **Molino Jewellers**, Pomona, NY (US)

( * ) Notice:    Subject to any disclaimer, the term of this
                 patent is extended or adjusted under 35
                 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/456,188**

(22) Filed:     **Jun. 6, 2003**

(65)            **Prior Publication Data**

        US 2004/0020243 A1 Feb. 5, 2004

        **Related U.S. Application Data**

(60) Provisional application No. 60/399,281, filed on Jul. 30,
     2002.

(51) **Int. Cl.$^7$** .............................................. **A44C 13/00**

(52) **U.S. Cl.** ............................. **63/1.16**; 63/29.1; 63/31;
                                                          63/40

(58) **Field of Search** ............................. 63/29.1, 31, 40,
                                              63/23, 1.16, 1.17

(56)            **References Cited**

           U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 770,573 | A | * | 9/1904 | Hacherelle .................... 63/23 |
| 1,032,272 | A | * | 7/1912 | Walrow ........................ 63/23 |
| D59,529 | S | * | 10/1921 | Weed .......................... D11/79 |
| 1,797,703 | A | * | 3/1931 | Sulger et al. .................. 63/20 |
| 3,381,495 | A | * | 5/1968 | Emerson ....................... 63/33 |
| 4,034,573 | A | * | 7/1977 | Elkaim ........................ 63/31 |
| D247,881 | S | * | 5/1978 | Hitchens ...................... D11/41 |
| 4,245,486 | A | * | 1/1981 | Matsumoto et al. ........... 63/23 |
| 4,381,653 | A | * | 5/1983 | Diehl .......................... 63/33 |
| 4,461,158 | A | * | 7/1984 | Diehl .......................... 63/33 |
| 4,512,748 | A | * | 4/1985 | Matsumoto et al. ........ 446/354 |
| 4,542,631 | A | * | 9/1985 | Esser, III ..................... 63/31 |
| 4,967,574 | A | * | 11/1990 | Bielka ......................... 63/23 |
| 4,970,878 | A | * | 11/1990 | Lee ............................. 63/23 |
| 6,070,435 | A | * | 6/2000 | Davidziak ..................... 63/23 |
| 6,082,139 | A | * | 7/2000 | Davidziak ..................... 63/23 |

           FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| JP | 2000106924 | * | 4/2000 | |
| JP | 2000106924 A | * | 4/2000 | .......... A44C/25/00 |

* cited by examiner

*Primary Examiner*—Robert J. Sandy
*Assistant Examiner*—Katherine Mitchell
(74) *Attorney, Agent, or Firm*—I. Zborovsky

(57)            **ABSTRACT**

A pendant necklace having a chain and a pendant. The
pendant can convert from a first closed configuration, such
as a Star of David, heart, or cross, to at least one open
configuration such that multiple decorative looks are avail-
able. The pendant comprises at least three elements which
are pivotably connected, and the pendant elements are
prevented from pivoting about each other to a predetermined
angle by pivot stops so that the open configuration does not
inadvertently go to the closed configuration when in the
open configuration.

**9 Claims, 16 Drawing Sheets**



# FIG. 1



# FIG. 2



# FIG. 3



# FIG. 4



Case 1:09-cv-05281-VM     Document 1     Filed 06/05/2009     Page 15 of 44

# FIG. 5



## FIG. 5a



## FIG. 5b





## FIG. 5c



*FIG. 6*

# FIG. 7





*FIG. 8*

# FIG. 9



# *FIG. 9a*





FIG. 10



FIG. 11

# FIG. 12





*FIG. 13*



FIG. 14

US 6,789,395 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

## CONVERTIBLE PENDANT JEWELRY

### RELATED APPLICATIONS

This application is related to Provisional Application Ser. No. 60/399,281 filed on Jul. 30, 2002 entitled Convertible Pendant Jewelry. The entire disclosure of this provisional application is incorporated herein by reference.

### FIELD OF THE INVENTION

This invention relates to a novel pendant jewelry, e.g., a necklace, that can be converted from pendant jewelry of a first configuration to pendant jewelry of a second configuration or even third configuration.

### PRIOR ART

Prior art relevant references are:

U.S. Pat. No. 3,381,495 to Emerson describes a convertible emblem that has a plurality of plates pivotally attached at one of the corners and superposed one upon the other. When the plates are closed, they form a framed symbol and when they are spread apart, they form a series of letters associated in meaning with the symbol.

U.S. Pat. No. 1,032,257 to Walrow describes a pendant article of jewelry, in particular a cross made up of two members in pivotal relation with each other at points intermediate of the ends of each, one of the members being provided with a slot through which the other member extends, which can be converted to an elongated article of jewelry. The jewelry hangs from a single eye at the top of the cross.

U.S. Pat. No. 4,718,252 to Fossas describes a balancing means provided as part of an ornament worn around the neck for maintaining an inertial balance and predetermined degree of symmetry about the neck while alleviating or eliminating pressure directly exerted on the neck.

U.S. Pat. No. 4,461,158 to Diehl describes an article of jewelry in the shape of a butterfly or insect that has two attachments, one for each end of a chain or a string. The attachments are fixed to the free ends of rigid wires, the other ends of the wires being fastened to a body of the article of jewelry so they articulate freely with the body.

U.S. Pat. No. 4,334,413 to Gaston et al describes an adjustable necklace that may be assembled rapidly without soldering.

U.S. Pat. No. 4,265,098 to Wayne describes a device for carrying a removable pendant from a chain or necklace which has an aperture into which is inserted the top bar of a T-shaped member which carries the pendant. Means are provided for locking the pendant within the device.

U.S. Pat. No. 4,034,573 to Elkaim describes an ornament which consists of at least two members suspended from a necklace, wristlet or similar retaining member. Each of the two members is movable relative to the retaining member because of a loop or ring affixed to each of the various members and through which the retaining member passes.

Japanese P2000-106924A describes a necklace that is changeable from a large four-sided pendant to a smaller four-sided pendant. The large pendant configuration consists of a central four-sided member surrounded by four adjacent stems meeting the top of the small four-sided pendant to form the large pendant that hangs from a chain member. When the four stems are parted the smaller four-sided pendant drops down and the four stems become part of the chain to form a second smaller pendant configuration.

Other references of interest are U.S. Pat. No. Des. 292,180 to Seraile, U.S. Pat. No. Des. 282,727 to Bulgari, U.S. Pat. No. Des. 261,121 to Barr and Des. 216,371 to Winchell.

### OBJECTS AND SUMMARY OF INVENTION

An object of this invention is to provide a pendant jewelry, such as a necklace, that can be converted from a pendant jewelry of a first configuration to a pendant jewelry of a second configuration or even third configuration.

Another object of the invention is to provide a pendant jewelry that has a symbolic nature that can be configured into another configuration of pendant jewelry.

The pendant necklace of this invention has a chain having a first end and a second end, a pendant member having a first end and a second end, the pendant member having at least three pendant elements pivotally connected to each other by hinges that permit adjacent elements to pivot about each other in a plane. A pivot stop is associated with each hinge. The first end of the chain is attached to the first end of the pendant member and the second end of the chain is attached to the second end of the pendant member. An attachment means is provided for releasably attaching the first end of the pendant member to the second end of the pendant member. When the first end of the pendant member is attached to the second end of the pendant member, the pendant has a first closed configuration that hangs from the ends of the chain member, e.g., a Star of David, heart or cross. When the first end of the pendant member is released from the second end of the pendant member, adjacent pendant elements pivot about each other in the plane to form a pendant having a second open configuration that hangs from the ends of the chain member. The pendant elements are prevented from pivoting about each other to a predetermined angle by the pivot stops to thereby prevent the first end of the pendant member from contacting the second end of the pendant member to prevent the second open configuration from closing.

### BRIEF DESCRIPTION OF THE DRAWINGS

These with other objects and advantages which will become apparent reside in the details of construction and operation as will be more fully described and claimed, reference being made to the accompanying drawings forming a part hereof, wherein like numerals refer to like parts throughout, and in which:

Reference is made to FIGS. 1–14 to assist in understanding this invention.

FIG. 1 is a front view of the convertible pendant jewelry in a first configuration in the shape of the Star of David;

FIG. 2 is a front view of the Star of David convertible pendant jewelry shown in FIG. 1 opened to another configuration;

FIG. 3 is a rear view of the Star of David convertible pendant jewelry configured as in FIG. 1.

FIG. 4 is a rear view of the Star of David convertible pendant jewelry configured as in FIG. 2.

FIG. 5 is a front view of the convertible pendant jewelry in a first configuration in the shape of a heart;

FIG. 5*a* is an enlarged front view of the hinge when the convertible pendant jewelry in a first configuration as shown in FIG. 5;

FIG. 5*b* is an enlarged front view of the hinge when the convertible pendant jewelry is in, for example, another configuration as shown in FIG. 6;

US 6,789,395 B2

3

FIG. 5c is an enlarged perspective of the hinge mechanism shown in FIGS. 5a and 5b;

FIG. 6 is a front view of the heart shaped convertible pendant jewelry shown in FIG. 5 opened to another configuration;

FIG. 7 is a rear view of the heart shaped convertible pendant jewelry configured as in FIG. 5;

FIG. 8 is a rear view of the heart shaped convertible pendant jewelry configured as in FIG. 6.

FIG. 9 is a front view of the convertible pendant jewelry in a first configuration in the shape of a cross;

FIG. 9a is an enlarged perspective view showing a magnetic attachment means for releasably attaching the first end of the pendant member to the second end of the pendant member;

FIG. 10 is a front view of the convertible pendant jewelry in the shape of a cross shown in FIG. 9 opened to another configuration

FIG. 11 is a front view of the convertible pendant jewelry in the shape of a cross shown in FIG. 9 opened to a third configuration;

FIG. 12 is a rear view of the convertible pendant jewelry in the shape of a cross configured as in FIG. 9;

FIG. 13 is a rear view of the convertible pendant jewelry in the shape of a cross configured as in FIG. 10; and

FIG. 14 is a rear view of the convertible pendant jewelry in the shape of a cross configured as in FIG. 11.

DETAILED DESCRIPTION OF INVENTION

Referring to FIGS. 1–4, a pendant necklace is depicted having a first configuration of a Star of David 10. In general, a chain member 30 is provided that has a first end 36a and a second end 36b. The pendant member 10 has a first end 28a and a second end 28b, the pendant member 10 comprising five pendant elements 32, 34, 32a, 34a, 23 pivotally connected to each other by hinges 16, 18, 20, 22 that permit adjacent elements to pivot about each other in a plane, the pendant elements comprising a central element 23 being in the shape of a parallelogram with four sides 23a, 23b, 23c, 23d and two angulated elements 32a, 32b on each side of one angle of the central element 23. A pivot stop is associated with each hinge 15a, 15b, 15c, 15d. The first end of the chain 36a is attached to the first end of the pendant member 28a and the second end of the chain 36b is attached to the second end 28b of the pendant member 10.

Attachment means 12,14 is provided for releasably attaching the first end 28a and second end 28b of the pendant member 10 to adjacent sides 23a, 23b of the central element 23. The attachment means 12,14 may, for example, comprise mating latches on ends 28a, 28b and sides 23a, 23b or a magnet on, for example ends 28a, 28b. When the first and second ends 28a, 28b of the pendant member 10 are attached to adjacent sides 23a, 23b of the central element 23, each angulated pendent element 32, 32a, 34, 34a contacts a side 23b, 23c, 23a, 23d, respectively, of the central element 23 to form a first closed configuration in the shape of the Star of David that hangs from the ends of the chain member 30. (See FIGS. 1 and 3)

When the first and second ends 28a, 28b of the pendant member are released from the adjacent sides 23b, 23a, respectively, of the central member 23, adjacent pendant elements 23, 32, 32a, 34, 34a pivot about each other in the plane to form a pendant 10 having a second open configuration that hangs from the ends of the chain member 30, with the central element 23 hanging between two angulated

4

elements 32a, 34a, the pendant elements 23, 32, 32a, 34, 34a prevented from pivoting about each other to a predetermined angle by the pivot stops 15a, 15b, 15c, 15d (See FIG. 4) to thereby prevent the first end 28a of the pendant member 10 from contacting the second end 28b of the pendant member 10 to prevent the second open configuration from closing (See FIGS. 2 and 4).

With somewhat more specificity and still referring to FIGS. 1–4, this embodiment of the invention is in the shape of a pendant Star of David 10. The Star 10 is suspended from a chain 30 attached to two sets of attachment rings 28 and 36, one set being attached to angulated articulated member 34 and the other set being attached to angulated articulated member 32. Members 32 and 34 are pivotally attached to angulated articulated members 32a and 34a (respectively) about hinge members 16 and 18 (respectively). Articulated member 32a and 32b are pivotally attached to an apex of diamond shaped member 23, near each other and on hinge members 20 and 22, respectively, that pass through member 23. This is shown in FIGS. 2 and 4.

At the ends of angulated articulated members 32 and 34 are locking members 12 and 14 which lock on to mating locking members 12a and 14b, respectively, that are mounted on or embedded in diamond shaped member 23.

When the locking members 12 and 14 are mated with corresponding locking member 12a and 12b, the Star of David is formed and suspended from chain 30 (FIGS. 1 and 3). When the locking members are detached from each other, the angulated articulated members 32, 32a, 34 and 34a pivot about hinge members 20, 22, 16 and 18 due to the weight of the jewelry and the pendant Star of David is converted to another pendant configuration (FIGS. 2 and 4).

Referring to FIGS. 5–8, a pendant necklace is provided that has a chain member 30 having a first end 36a and a second end 36b. The pendant member 110 has a first end 28a and a second end 28b. The pendant member 110 comprises four curvilinear pendant elements 32, 32a, 34, 34a pivotally connected to each other by hinges 16, 18, 20 that permit adjacent elements to pivot about each other in a plane. A pivot stop 15a, 15b, 15c is associated with each hinge 18, 20, 16, respectively. The first end 36a of the chain 30 is attached to the first end 28a of the pendant member 110 and the second end 36b of the chain 30 is attached to the second end 36b of the pendant member 110.

An attachment means 12, 12a is provided for releasably attaching the first end 28a of the pendant member 110 to the second end 28b of the pendant member 110. The attachment means 12, 12a may, for example, comprise mating latches on each end of the pendant member or a magnetized latch, e.g., similar to that depicted in FIG. 9a, discussed below.

When the first end 28a of the pendant member 110 is attached to the second end 28b of the pendant member 110, the curvilinear pendent elements 32, 32a, 34, 34a form a first closed configuration in the shape of a heart that hangs from the ends of the chain member 30 (FIGS. 5 and 7).

When the first end 28a of the pendant member 110 is released from the second end 28b of the pendant member 110, adjacent pendant elements 32, 32a, 34, 34a pivot about each other in the plane around the hinges 16, 18, 20 (see FIGS. 5a–5c) to form a pendant 110 having a second open configuration that hangs from the ends 36a, 36b of the chain member 30, the pendant elements 32, 32a, 34, 34a prevented from pivoting about each other to a predetermined angle by the pivot stops 15a, 15b, 15c (see FIGS. 6 and 8) to thereby prevent the first end 28a of the pendant member 110 from contacting the second end 28b of the pendant member 110 to prevent the second open configuration from closing FIGS. 6 and 8).

US 6,789,395 B2

5
6

With somewhat more specificity and still referring to FIGS. 5–8, this embodiment of the invention is in the shape of a pendant Heart 110. The Heart 110 is suspended from a chain 30 attached to two sets of attachment rings 28 and 36, one set being attached to arcuate articulated member 32 and the other set being attached to arcuate articulated member 32a. Members 32 and 32a are pivotally attached to arcuate articulated members 34 and 34a (respectively) about hinge members 16 and 18 (respectively). Arcuate member 34 and 34a are pivotally attached to each other about hinge member 20.

At the ends of arcuate articulated members 12 and 12a are mating locking members 12 and 12a which lock on to each other. When the locking members 12 and 12a are mated with each other a Heart shaped pendant is formed and suspended from chain 30. When the locking members are detached from each other, the arcuate articulated members 32, 32a, 34 and 34a pivot about hinge members 20, 16 and 18 due to the weight of the jewelry and the pendant Heart is converted to another pendant configuration, see FIGS. 6 and 8.

Referring to FIGS. 9–14, a pendant necklace is provided that has a chain member 30 having a first end 36a and a second end 36b. A pendant member 210 has a first end 28a and a second end 28b, the pendant member 210 comprising four arcuate pendant elements 32, 32a, 34, 34a pivotally connected to each other by hinges 16, 18, 20 that permit adjacent elements to pivot about each other in a plane. A pivot stop 15a, 15b, 15c is associated with each hinge 16, 18, 20.

The first end 36a of the chain 30 is attached to the first end 28a of the pendant member 210 and the second end 36a of the chain 30 is attached to the second end 28b of the pendant member 210. An attachment means 12, 12a is provided for releasably attaching the first end 28a of the pendant member 210 to the second end 28b of the pendant member 210. The attachment means 12, 12a may, for example, comprise mating latches on each end of the pendant member or a magnetized latch.

When the first end 28a of the pendant member 210 is attached to the second end 28b of the pendant member 210, the arcuate pendent elements 32, 32a, 34, 34a form a first closed configuration in the shape of a cross that hangs from the ends 36a, 36b of the chain member 30. (FIGS. 9 and 12)

When the first end 28a of the pendant member 210 is released from the second end 28b of the pendant member 210, adjacent pendant elements 32, 32a, 34, 34a pivot about each other in the plane to form a pendant 210 having a second open configuration that hangs from the ends 36a, 36b of the chain member 30, the pendant elements 32, 32a, 34, 34a prevented from pivoting about each other to a prede-termined angle by the pivot stops 15a, 15b, 15c to thereby prevent the first end 28a of the pendant member 210 from contacting the second end 28b of the pendant member 210 to prevent the second open configuration from closing. (FIGS. 10, 11, 13 and 14.)

With somewhat more specificity and referring to FIGS. 9–14, this embodiment of the invention is in the shape of a pendant Cross 210. The Cross 210 is suspended from a chain 30 attached to two sets attachment rings 28 and 36, one set being attached to arcuate articulated member 32 and the other being attached to arcuate articulated member 32a. Members 32 and 32a are pivotally attached to arcuate articulated members 34 and 34a (respectively) about hinge members 16 and 18 (respectively). Arcuate member 34 and 34a are pivotally attached to each other about hinge member 20.

At the ends of arcuate articulated members 32 and 32a are mating locking members 12 and 12a which lock on to each other. When the locking members 12 and 12a are mated with each other a Cross shaped pendant is formed and suspended from chain 30. When the locking members are detached from each other, the arcuate articulated members 32, 32a, 34 and 34a pivot about hinge members 16, 18, 20 due to the weight of the jewelry and the pendant Cross is converted to another pendant configuration, see FIGS. 10 and 13 or yet another configuration as shown in FIGS. 11 and 14. The locking members may be latches, for example as depicted in FIGS. 2 and 4, elements 12 and 14 or magnetic as depicted in FIG. 9a with element 12 and 12a being magnetically attracted to each other.

The description of invention herein makes reference to several preferred embodiments. Those skilled in the art, however, and familiar with the disclosure of the subject invention, may recognize additions, deletions, substitutions, modifications, and/or other changes which will fall within the purview of the invention as defined in the following claims.

What is claimed is:

1. A pendent jewelry, comprising a chain member having a first end and a second end: a pendent member having a first end and a second end and comprising a plurality of pendent elements pivotally connected to each other by hinges that permit adjacent elements to pivot about each other in a plane; wherein the first end of the chain is attached to the first end of the pendent member and the second end of the chain is attached to the second end of the pendent member; means for releasably connecting the chain member to the pendent member; a pivot stop associated with each hinge, said stop extending laterally from a respective one of said pendent elements; attachment means; wherein the pendent elements of the pendent member are formed so that they can form the pendent member with a first closed configuration that hangs from the ends of the chain members and is fixed by said attachment means, and the pendent elements can pivot about each other in the plane to form the pendent member having a second open configuration that hangs from the ends of the chain member and the pendent elements are stopped and prevented from pivoting about each other to a predetermined angle by the pivot stops.

2. A pendent jewelry as defined in claim 1, wherein the pendent elements are formed so that when the first end of the pendent member is attached to the second end of the pendent member, the pendent member has the first closed configuration, and when the first end of the pendent member is released from the second end of the pendent member the pendent elements pivot about each other to form the second open configuration with the pivot stops preventing the first end of the pendent member from contacting the second end of the pendent member to prevent the second open configu-ration from closing.

3. A pendent jewelry as defined in claim 1, wherein the attachment means comprises mating latches at each end of the pendent member.

4. A pendent jewelry as defined in claim 1, wherein the attachment means comprises a magnetized latch.

5. A pendent jewelry as defined in claim 1, wherein the pendent members comprises include at least three pendent elements.

6. A pendent jewelry as defined in claim 1, wherein the attachment means is formed to releasably attach the first end of the pendent member to the second end of the pendent member.

7. A pendent jewelry as defined in claim 1, wherein the plurality of the pendent elements of the pendent member

US 6,789,395 B2

**7**

include five pendent elements pivotally connected to each other by the hinges with a central element shaped as a parallelogram with four sides and two angulated elements on each side of one angle of the central element including a first angulated element pivotally connected with said central element and a second angulated pendent element pivotally connected with said first angulated element; wherein in the closed configuration, each angulated element contacts a side of the central element in two points to form the first closed configuration in the shape of a star of David that hangs from the end of the chain member and the attaching means are provided on each of the second angulated elements and on the central element; and in the second open configuration the central element hangs between the two first angulated elements.

**8**. A pendent jewelry as defined in claim **7**, wherein the central element is in the shape of a parallelogram with four sides including two upper sides and two lower sides, so that in the closed configuration the first angulated elements are associated with the upper sides and the second angulated elements are associated with the lower sides of the central element, and the attachment means are provided on each of the second angulated elements and on the lower sides of the central element.

**9**. A pendent jewelry as defined in claim **1**, wherein the plurality of the pendent elements include four arcuate elements with two first arcuate elements pivotally connected with one another and two second arcuate elements each pivotally connected to a respective one of the first arcuate elements and said second elements are further connected with the first and second ends of the chain member, so that

**8**

in the closed configuration first portions of first arcuate elements extend substantially parallel and close to one another, first portions of the second arcuate elements also extend substantially parallel and close to one another and form continuations of the first portions of the first arcuate elements, and the second portions of the first arcuate elements and the second portions of the second arcuate elements extend substantially parallel and close to one another and form continuations of each other, while in one open configuration the first portions of the first arcuate elements extend substantially vertically and parallel and close to one another, the second portions of the first arcuate elements extend substantially horizontally and transversely to the first portions of the first arcuate elements, the second portions of the second arcuate elements extend substantially vertically and transversely to the second portions of the first arcuate elements, and the first portions of the second arcuate elements extend substantially horizontally and transversely to the second portions of the second arcuate elements, while in a further open configuration the first portions of the first arcuate elements extend substantially horizontally away from one another, the second portions of the first elements extend substantially vertically from the first portions of the first arcuate pendent elements, the second portions of the second arcuate pendent elements extend substantially horizontally away from the second portions of the first arcuate elements, and the first portions of the second arcuate elements extend substantially vertically and transversely to the second portions of the second arcuate elements.

\*   \*   \*   \*   \*

**EXHIBIT B**



ShopNBC
< Homepage

Search by Item # or Keyword

Sign In/Register | Order Status | My Account | Help | Cart 0 items

On Air On Today | Week in Review | Program Guide | Watch Us Live

Lunch Break Specials Great deals on limited quantities, only during lunchtime hours

ShopNBC Homepage > Text search "convertible" > J182149

## 14K White or Yellow Gold 18" Convertible Diamond Heart Necklace - J182149

Photos | Video

ZOOM IN | ZOOM OUT | RESET IMAGE

Only 1 Available

**Clearance: $437.98** Save: $331.98 (43% off)

Retail value: ~~$1,260.00~~
Regular price: ~~$769.96~~
Shipping & Handling: $10.99

**Select Color:**

Color

Add to Cart | QuickBuy

**Overall Rating** 3 out of 5
Read all reviews Write a review
Share this Product:

✓ Notify me if back in stock
Forward to a friend

Description | Shopping Guide | About the Collection | Shows | Product Reviews

EFFY COLLECTION

**14K White or Yellow Gold 18" Convertible Diamond Heart Necklace**

Get an accessory that not only offers you sophistication and style, but versatility as well! Who wants to have the same look every time they slip on their necklace? Now you don't have to with this dramatic convertible necklace! Designed in your choice of polished 14K white or yellow gold, you can wear it in a circle, in a curved line, or as a straight line and always present a fresh new look! The center hearts sparkle from every angle with 80 round, single cut permanent heat processed diamonds in prong settings. The total diamond weight is approximately 0.39ct. Secured by a spring ring clasp, this look measures 18"L x 3/4"W.

Part of the Effy Collection and comes with a leather pouch and romance card. Treat with best of care. All jewelry should be occasionally examined for tightness of gemstones. Alterations and cleaning must be done by professional jewelers. All weights pertaining to diamond weights are minimum weights. Additionally, please note that many gemstones are treated to enhance their beauty. Click here for important information about gemstone enhancements and special care requirements.

### Better Together

14K Gold 18" Brazilian Pink Tourmaline & Diamond Necklace
**Clearance: $567.00**

14K Gold 18" Exotic Gemstone Choice Station Necklace
**ShopNBC Price: $334.00**

14K Gold 18" Labradorite & Diamond Necklace
**Sale Price: $396.36**

### Shopping Guides

Diamond

Search: Search by Item # or Keyword

E-Mail Subscriptions

Order: 1-800-884-2212 Customer Service: 1-800-676-5523

ShopNBC Credit Card | Our Hosts | Shopping Guides | Customer Service | Recall Notice

About Us | Careers | Investor Relations | Vendors | Affiliates | Terms of Use | Privacy | Protection Plan | Site Map | NBCStore.com

ShopNBC.com Be Good To Yourself.

BBB Accredited Business | BizRate.com customer certified | VeriSign Secured | PayPal

———————— SHOP OUR CATEGORIES ————————

| JEWELRY | WATCHES | HOME | COMPUTERS | BEAUTY | APPAREL | HEALTH | COINS |
|---------|---------|------|-----------|--------|---------|--------|-------|
| DIAMONDS | CROTON | BEDDING | DESKTOPS | PRAI | HANDBAGS | FITNESS EQUIPMENT | COINS |
| EARRINGS | INVICTA | HOME DÉCOR | GPS | ISOMERS | JACKETS | ELLIPTICALS | DOLLAR COINS |
| NECKLACES | TAG HEUER | LAMPS | iPOD | DR COPELAND | PANTS | PILATES | COIN JEWELRY |
| RINGS | MEN'S WATCHES | TABLEWARE | LAPTOPS | SENNA | PAMELA McCOY | TREADMILLS | PROOF & MINT |
| GOLD | WOMEN'S WATCHES | | | | | | |
| SILVER | | | | | | | |
| GEMSTONES | | | | | | | |

©2009 ShopNBC. All rights reserved. All trademarks, service marks and logos are owned by or registered to ShopNBC or the
National Broadcasting Company, Inc. All other product or brand names are trademarks of their respective owners.

ShopNBC
6740 Shady Oak Road, Eden Prairie, MN 55344

**EXHIBIT C**

Case 1:09-cv-05281-VM    Document 1    Filed 06/05/2009    Page 35 of 44



☐ Help    ☐ Account    ☐ Elite Club    Cart    0 items

**ShopNBC**    Shops    On Air    Auctions    Clearance

Jewelry | Watches | House Home | Computers Electronics | Beauty | Apparel Accessories | Health Fitness | Gifts Leisure

☐ Sign in/Register    Search    Order by phone: 800-884-2212

**Buy 2 Items, Ship 1 FREE\*** Learn more....

## J128035 - 14K WG or YG Brazanite & Diamond Convertible Necklace

**Shopping Guides**

Care & Storage
Cleaning Methods
General Information

**Newsletters**

Sign up for our
ShopNBC Event Alert
Newsletter

Sign Up

**You May Also Like**

14K WG or YG
Brazanite & Diamond
Earrings
Sale price: **$299.97**

Closeup

| | |
|---|---|
| Sale price: | **$399.96** (20% off) |
| or 4 Value Pays: | $99.99 |
| Shipping & handling: | $7.99 |
| Retail value: | $952.00 |
| Regular price: | $499.98 |

**Sold out**

Select from available item(s) ▼

● No payments 180 days on orders $300+ on your ShopNBC Credit Card account

Forward to a friend

**Description**    **Shopping Guides**

A captivating design to complement any style! Crafted in your choice of polished 14K white or yellow gold, this necklace features one round cut 6mm brazanite in a four-prong setting. It also has 30 brilliant cut round diamonds in bead settings and a 16-1/2" cable chain with a lobster claw clasp. The pendant is a convertible design allowing it to be a star shape held together by magnets or a line design. The total brazanite weight is 0.80ct and the total diamond weight is 0.33ct (both approximate).

Case 1:09-cv-05281-VM     Document 1     Filed 06/05/2009     Page 36 of 44



14K Multi-Gemstone
& Diamond Earrings
Sale price: **$249.96**



14K Gemstone &
Diamond Flower
Earrings
Sale price: **$279.99**

## Your Recently Viewed Items                                    Clear all

 14K WG or YG
Brazanite &
Diamond Conv...

 14K Tsavorite &
Diamond Zig-Zag
Ring

14K WG/RG/YG
Diamond Star
Necklace

ShopNBC Credit Card | E-mails | Speed Shopping™ | Shopping Guides | Warranty info | Outlet stores | Site map
About us | Be an affiliate | Be a vendor | Jobs | Privacy | Terms of use | Investor relations | NBC Universal Store

Be Good To Yourself.                                    

©2005 ShopNBC  All rights reserved. All trademarks, service marks and logos are owned by or registered to ShopNBC or the
National Broadcasting Company, Inc. All other product or brand names are trademarks of their respective owners.

ShopNBC
6740 Shady Oak Road, Eden Prairie, MN 55344

http://www.shopnbc.com/product/?familyid=J128035&taxid=1                    4/12/2005

URL: http://www.shopnbc.com

**EXHIBIT D**



**ShopNBC**

- Shops
- On Air
- Special Collections
- Clearance
- Auctions

- Jewelry
- Watches
- House & Home
- Computers & Electronics
- Beauty
- Apparel & Accessories
- Health & Fitness
- Gifts & Leisure

My Account ⋮ Help ⋮ Cart 🛒 0 items

Sign In/Register

Search [enter item # or keyword] [Go]

Order: 800-884-2212

✔ HACKER SAFE
TESTED 22-MAR

Home > Text search "convertible necklace" > J194685

**All watches, jewelry, and apparel: Buy 2 items, ship 1 free. Online orders only. Learn more.**

**J194685 -Sterling Silver/Rhodium or Vermeil 16"Brilliante 105® Cubic Zirconia Convertible Cross Necklace**

**You May Also Like**



Sterling Silver/Gold or SS/Rhodium Brilliante 105® Cubic Zirconia Ring
**Your price: $129.99**



Colored Cluster Set of Earrings & 18" Necklace
**Sale price: $19.99**



 Enlarge first photo

Colors
More Photos

| | |
|---|---|
| Clearance: | $129.99 |
| or 2 Value Pays: | $64.99 |
| Shipping & handling: | $6.99 |
| Retail value: | $194.99 |

**Only 7 available**

[Select from available item(s) ▾]

[⮌QuickBuy] [Add to Cart]

® ShopNBC Protection Plan available for only $19.99

✉ Forward to a friend

3/22/2007





Back to first photo

**Sterling Silver/Vermeil
Brilliante 105® Cubic
Zirconia Double-Drop
Earrings
Sale price: $39.99**

Description
Shopping Guides
About the Collection

**Shopping Guides**

Silver
Gold
General
Information

A distinctive design of fascination! This piece has a magnet at the top. To convert the design, simply pull the top apart and flip over the design. It instantly transforms from a beautiful cross that you can wear during the day to a scintillating drop design necklace perfect for any evening occasion.

Crafted in rhodium plated sterling silver or vermeil, this convertible cross design features one oval cut 7.0 x 5.0mm Brilliante 105® cubic zirconia stone in a four-prong setting at the center. It also features three round cut 2.5mm Brilliante 105® cubic zirconia stones in channel settings at the sides. There are also 52 round cut 2.0mm Brilliante 105® cubic zirconia stones in channel settings making up the cross outline.

The total cubic zirconia weight is approximately 2.46ct. It measures 16"L x 1-7/16"W and has a rope style chain with a spring ring clasp.

Part of the Brilliante 105® Collection.

Your Recently Viewed Items                                    Clear all

 Sterling
Silver/Rhodium
or Vermeil 16...

 14K WG or YG
Diamond
Convertible
Earr...

Sign up for ShopNBC E-Mail| Your E-Mail Address     Go

ShopNBC Credit Card| Speed Shopping™| E-Mail Subscriptions| Our Hosts| Shopping Guides| Customer Service| Recall Notice

About Us| Careers| Investor Relations| Vendors| Affiliates| Terms of Use| Privacy| Protection Plan| Site Map

Be Good To Yourself                                    

©2006 ShopNBC. All rights reserved. All trademarks, service marks and logos are owned by or registered to ShopNBC or the National Broadcasting Company, Inc. All other product or brand names are trademarks of their respective owners.

ShopNBC
6740 Shady Oak Road, Eden Prairie, MN 55344

3/22/2007

AOL now offers free email to everyone. Find out more about what's free from AOL at AOL.com.

**EXHIBIT E**



